IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL LEE PAGE,  )
       Plaintiff,  )
  -vs-  )    Civil Action No. 14-0295
CAROLYN W. COLVIN,  )
COMMISSIONER OF SOCIAL SECURITY,  )
       Defendant.  )

AMBROSE, Senior District Judge.

**OPINION**
and
**ORDER OF COURT**

**SYNOPSIS**

Daniel Lee Page ("Page") filed an application for Title II disability insurance benefits and supplemental security income based, in part, upon diabetes and degenerative joint disease. The ALJ issued a partially favorable decision. That is, Page was granted benefits under Title XVI – Supplemental Security Income – effective July 2, 2012. With respect to the claim for disability insurance benefits, however, the ALJ found that Page had not been disabled prior to July 2, 2012 and the date on which he had last met the insured status under Title II for purposes of Social Security Disability benefits was March 31, 2010. Lee then filed a request for review, which the Appeals Council denied. Dennison subsequently appealed under 42 U.S.C. § 405(g).

Before the Court are Cross-Motions for Summary Judgment. (Docket Nos. [8] and [12]). Both parties have filed Briefs in Support of their Motions. (Docket Nos. [9] and [13]). Plaintiff has also filed a Reply Brief. (Docket No. [15]). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, the Plaintiff's Motion is granted in part. I am remanding this case on a limited issue as discussed more fully below.

1

## I. BACKGROUND

Page offers July 29, 2009 as his disability onset date. See ECF Docket No. [9], p. 1.[1] (R. 24, 44) He was 55 years old at the time of the hearing, having been born on July 3, 1957. (R. 31) He attended school through the tenth grade and obtained his GED some years later. (R. 31) Although Page never attended trade school, his records indicate steady employment throughout his adult life in fields such as driving a tractor trailer (he holds a Class A CDL) (R. 32-35) and work as a constable (R. 35).

As stated above, the ALJ concluded that Page is disabled, but became so only on July 2, 2012. (R. 15) More specifically, the ALJ concluded that since the onset date of July 29, 2009, Page retained the residual functional capacity to perform light work with certain restrictions. (R. 17) As of July 2, 2012, however, Page's age category changed from "an individual closely approaching advanced age" to "an individual of advanced age." *See* 20 C.F.R. § 404.1563 and 416.963. (R. 20) At that point in time, the ALJ determined, "considering the claimant's age, education, work experience and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform." (R. 21), *citing* 20 C.F.R. § 404.1560(c), 404.1566, 416.960(c) and 416.966.

Page assigns several errors to the ALJ and requests the entry of benefits for the period of time beginning with the onset date. In the alternative, Page requests a remand to the ALJ for further consideration. For the reasons set forth below, Page's requests are granted in part and denied in part.

## II. LEGAL ANALYSIS

### A) Standard of Review

The standard of review in social security cases is whether substantial evidence exists in

---

[1] Page had previously filed applications for SSI and DIB on May 8, 2008 which were denied initially on July 31, 2008 and again on July 28, 2009 following a hearing by an ALJ. (R. 64-81).

the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the

national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

**B) Discussion**

    1. Medical Sources

Page objects to the manner in which the ALJ considered the medical evidence from his medical sources. Certainly, the longstanding case law within this Circuit is that the report of a treating physician should be accorded greater weight than that of a non-examining consultant. *Brownawell v. Comm'r. of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008). This is true particularly if that physician's treatment record or opinion "reflects expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), *quoting*, *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Indeed, "[i]t is axiomatic that the Commissioner cannot reject the opinion of a treating physician without specifically referring to contradictory medical evidence." *Moffatt v. Astrue*, 2010 U.S. Dist. LEXIS 103508 at * 6 (W.D. Pa. 2010). If a "treating source's opinion as to the nature and severity of a claimant's impairments is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record,' it will be given 'controlling weight.'" *Wiberg v. Colvin*, Civ. No. 11-494, 2014 WL 4180726 at * 21 (D. Del. Aug. 22, 2014), quoting, 20 C.F.R. § 404.1527(c).That is, unless

4

there is contradictory evidence, an ALJ may not reject a treating physician's opinion. An ALJ's own credibility judgments, speculation or lay opinion is not sufficient. *Wiberg*, 2014 4180726 *citing, Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

"Where there is a difference of opinion between a treating physician and a non-treating, non-examining physician, the ALJ is permitted to decide to whom to give greater weight, but 'cannot reject evidence for no reason or for the wrong reason.'" *Link v. Social Sec. Disability*, Civ. No. 13-812, 2014 WL 3778320 at * 9 (W.D. Pa. 2014), *quoting, Smink v. Colvin*, 196 Soc. Sec. Rep. Serv., 563 (M.D. Pa. Nov. 19, 2003). Moreover, "[t]he law is clear … that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). Additionally, state agent opinions merit significant consideration. *See* SSR 96-6p ("Because State agency medical and psychological consultants … are experts in the Social Security disability programs … 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] … to consider their findings of fact about the nature and severity of an individual's impairment(s) … .").

Bearing this legal framework in mind, I find no error in the ALJ's treatment of the records from Dr. Schogel, Page's treating physician. Page urges that "[t]he ALJ essentially ignores the records from Dr. Schogel during the critical period before March 31, 2010, to the date of last insurance." *See* ECF Docket No. [9], p. 5. A review of the records indicates that Page saw Dr. Schogel on only two occasions, and Dr. Schogel's partner – Dr. Fardo – on three occasions, during this period. On one such occasion, Page stated that he was feeling better. (R. 396) Page stated that his vision seemed better, and he denied fatigue, malaise and weight loss. (R. 396) Notably, his physician observed that Page "made excuses" and reviewed with him his history of "noncompliance". (R. 397) During a subsequent visit Dr. Schogel stated that Page's compliance with his treatment plan was only "fair". (R. 385) Page visited his treating physicians on two occasions during the relevant time period, but those visits were prompted by coughs and colds.

(R. 377-381) Page presented on March 5, 2010 because of a cough and wheezing. (R. 381) During that visit, Page informed Dr. Fardo that he was a constable, that he would be attending a training class the following weekend, and that his duties would include a lot of physical interaction. (R. 381) During a March 10, 2010 visit, Page complained of a cough. (R. 377) He denied fevers, chills or malaise. (R. 378) Page's contention that these exhibits buttress his claim is simply unfounded. These records document a cold, noncompliance with his diabetes treatment regimen, and little else.

Similarly, Page's claim that the ALJ failed to consider these documents is incorrect. First, the ALJ noted that he carefully considered the "entire record." (R. 16) Second, the ALJ makes specific reference to Schogel and Fardo's office treatment records during the relevant period of time. (R. 19, stating that "[t]he documentary evidence does show that the claimant's diabetes mellitus was uncontrolled, but improved.") Third, simply because the ALJ might not have specifically mentioned certain records does not mean that he did not consider it. *See Grella v. Colvin*, Civ. No. 12-2115, 2014 WL 4437640 (M.D. Pa. Sept. 9, 2014) (stating that "[a]lthough the diagnostic testing and the post-operative left shoulder MRI may not be specifically mentioned in the decision, this does not mean that the ALJ did not review them."). Indeed, there is no requirement for an ALJ to discuss or make reference to every relevant treatment note provided that the ALJ considers and evaluates the medical evidence in the record. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001); see also *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (finding that the mere failure to cite to particular evidence does not mean that the ALJ failed to consider it) and *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that the ALJ need not provide a written evaluation of each item of evidence submitted).

2.  The ALJ's use of the Grids

I similarly reject Page's contention that the ALJ erred in his findings relating to Page's ability to perform light exertional work prior to July 2, 2012. *See* ECF Docket No. [9], p. 8. In a

one paragraph argument, Page contends that the ALJ erred because he relied upon the grids when nonexertional limitations were in place. According to Page, this is in error and contrary to *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000) and AR 01-1(3). *See* ECF Docket No. [9], p. 8. I disagree. In *Allen v. Barnhart*, 417 F.3d 396, 404 (3d Cir. 2005), the Court of Appeals for the Third Circuit explained that AR 01-1(3) stands for the proposition that the grids should not be used exclusively where a claimant has nonexertional limitations. However, the Agency explicitly stated that the Ruling does not apply when "we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects the claimant's occupational job base. When we rely on such an SSR to support our finding that jobs exist in the national economy that the claimant can do, we will include a citation to the SSR in our determination or decision." *Allen*, 417 F.3d at * 404, *quoting*, AR 01-1(3), 2001 WL 65745 at * 4 (S.S.A.). Here the ALJ specifically cites to SR 85-15. Page makes no argument as to how the ALJ erred in this regard.[2]

        3.      The ALJ's findings regarding obesity

I reach a different conclusion, however, with respect to Page's contention that the ALJ failed to properly apply SSR 02-1p regarding obesity. Page urges that the ALJ failed to consider what impact his obesity might have in combination with his other impairments. The ALJ did find that Page's obesity constituted a "severe impairment." (R. 17) The ALJ also stated that "I nevertheless have considered the claimant's obesity both by itself and in conjunction with his other impairments. I find that the claimant's obesity does not rise to the level of a listing

---

2 Page includes several paragraphs in this section devoted to the ALJ's discussion of his past work as a security guard and constable. The majority of the text is comprised of quotations from the ALJ's ruling and an excerpt from the transcript. The two remaining paragraphs pose questions apparently intended to undermine what he believes to be the ALJ's "unsupported" conclusion that Lee's credibility regarding his past work history was suspect. I reject such a contention. The record contains evidence that Page had earnings in 2010, the exact time frame he claims to have been completely disabled. Moreover, he told his treating physicians he had a job as a constable and that it would be somewhat physical in nature. When questioned during the hearing, Page was evasive in explaining this past work.

impairment." (R. 17) The question before me is whether the ALJ engaged in a meaningful analysis in this regard.

I find that he did not. In *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 503 (3d Cir. 2009), the Court of Appeals for the Third Circuit recognized that, as Page suggests, SSR 02-1p provides guidance in assessing how obesity is to be considered. This SSR superseded SSR 00-3p, but did not materially amend it. *Diaz*, 577 F.3d at 503. SSR 00-3p instructed that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders." SSR 02-1 notes, "[t]he functions likely to be limited depend on many factors, including where excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also effect ability to do postural functions, such as climbing, balance, stooping, and crouching." SSR 02-1p. Given these parameters, an ALJ "must clearly set forth the reasons for his decision," and "[c]onclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Diaz*, 577 F.3d at 503, *citing, Burnett v. Cmm'r. of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). Indeed, the ALJ must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." SSR 02-1p.

As in *Diaz*, here the ALJ's analysis regarding obesity was insufficient. It consists of one sentence. (R. 17) I do not mean to suggest that his conclusion may not be accurate, simply that there is not enough information provided for me to gauge its accuracy.[3] There is simply no

---

[3] I note, as did the *Ellis* court, that "[b]y referencing his legal duty, the ALJ subjectively may have included obesity in his analysis. Absent an explicit discussion and analysis, however, the ALJ has precluded judicial review. *Ellis*,

explicit analysis of the cumulative impact of Page's obesity and the other impairments of his functional ability. *See Ellis v. Astrue*, Civ. No. 9-1212, 2010 WL 18172467 at * 5 (E.D. Pa. April 30, 2010) ("[t]he ALJ's severity finding triggered an obligation to discuss Ellis' obesity, individually and in combination with diabetes, hypertension, and bilateral knee disorders.") A mere acknowledgement of an obligation to assess Page's obesity alone and in conjunction with other severe impairments without actual further analysis is legally insufficient. *Ellis*, 2014 WL 1817246 at * 5. As such, I cannot perform my reviewing function. *See Diaz*, 577 F.3d at 504-05 (remanding where the ALJ did not engage in any analysis of the cumulative impact of the claimant's obesity upon her other impairments); *see also, Esterly v. Comm'r of Soc. Sec.*, Civ. No. 13-2954, 2014 WL 2931647 at * 7 (D. N.J. June 30, 2014) (remanding where the ALJ found at step two that the claimant's obesity was a severe impairment but failed to discuss whether it, individually or in combination with other impairments, was medically equivalent to a listed impairment); *Ellis v. Astrue*, Civ. No. 9-1212, 2010 WL 1817246 at * 5 (E.D. Pa. April 30, 2010) (stating that "[r]emand is required where a claimant alleges obesity, the ALJ finds obesity is a severe impairment, and the ALJ fails to evaluate obesity when determining the RFC").[4] Consequently, the case is remanded to the ALJ on this narrow issue with directions for the ALJ to consider the effect of Page's obesity, individually and in combination with his other impairments, on his workplace function at every step of the sequential process.

    4.    The five-step sequential process

Page next argues that the ALJ erred in applying the five-step analytical process for the period between July 9, 2009 to July 12, 2012. See ECF Docket No. [9], p. 13- 15. This

---

2010 WL at 1817246 at * 5.
[4] I find the Commissioner's reliance on *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) to be misplaced. In *Rutherford*, the ALJ never found obesity to constitute a severe impairment at step two. The claimant did not assert obesity as an impairment. The Court found that remand was not required because the claimant never argued that her obesity impacted her job performance. *See Diaz*, 577 F.3d at 504 (distinguishing *Rutherford* because the claimant in Diaz asserted, and the ALJ found, that her obesity constituted a severe impairment); Esterly, 2014 WL 2931647 at * 7 (same).

"argument" consists largely of quoting the five-step sequential process from the Code of Federal Regulations and quoting excerpts from the ALJ's decision. In fact, Page's entire "argument" is relegated to one paragraph questioning what "additional limitations" the ALJ may have found.

I decline to consider Page's argument because it is conclusory, undeveloped and difficult to follow. *See Pennsylvania v. U.S. Dept. of Health & Human Serv.*, 101 F.3d 939, 945 (3d Cir. 1996) (stating that conclusory assertions, unaccompanied by a substantial argument, will not suffice to bring an issue before the court). In the alternative, I reject his argument as unpersuasive. It apparently relates to his contentions regarding the ALJ's use of the grids. As set forth above, I find the ALJ's use of the grids to be appropriate.

### 5. Credibility Determinations

Page also attacks the ALJ's findings with respect to credibility. It is well-established that the ALJ has the responsibility of determining a claimant's credibility. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determinations are entitled to great deference, unless they are not supported by substantial evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981), *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S. Ct. 1133, 43 L.Ed.2d 403 (1975).

After careful review, I find that the ALJ's credibility determinations are supported by substantial evidence of record. It is clear that the ALJ engaged in an appropriate analysis of whether Page's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 17-19) Indeed, the ALJ referenced Page's diabetes mellitus and associated diabetic neuropathy, the resulting pain tingling and numbness in his lower

extremities, bilaterally. (R. 18) He acknowledged Page's complaints regarding his ability to sit and stand, his problems with his knees, his difficulty swallowing and his emesis. (R. 18) He also referenced his visual limitations resulting from diabetes. (R. 18) The ALJ then concluded that Page's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 19) His citations to the record, and my own independent review of the same, convince me that his decision should be affirmed. Page's whole body bone scan was within normal limits. (R. 19).[5] Similarly, with respect to his headaches, Page reported to Dr. Lu that they only lasted about 15 minutes and were mild. (R. 320) Page declined taking additional headache medicine. With respect to Page's "blurry vision," Page does not point to any independent medical record confirming this impairment. All that was before the ALJ were Page's own complaints and the knowledge that Page did not wear any type of corrective lens. Nor had Page undergone any vision testing. Page's complaints of disabling pain are also belied by his activities of daily living. The ALJ found him to be independent in matters of self-care and personal hygiene. (R. 20) He is able to prepare himself meals and can assist with basic household chores. (R. 20) He can also drive a car. (R. 20) Finally, as the ALJ noted, Page's credibility was called into question regarding when he last worked.

A reviewing court should "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess the witness's demeanor." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). There is no basis before me upon which to challenge the ALJ's credibility determinations.

  6.  Residual functional capacity

Page contends that the ALJ erred with respect to his findings regarding residual

---

[5] Page references the whole body scan as well as other tests and suggests that the ALJ misunderstood the nature of these tests. For instance, according to Page, the ALJ relied upon the whole body scan to draw conclusions regarding Page's diabetes. *See* ECF Docket No. [9], p. 17. Page offers no support for this conclusion. Nor is there any. The ALJ referenced the whole body scan in the context of Page's complaints of back pain. Consequently, I find no merit in Page's contention that the ALJ should have employed a medical expert.

functional capacity. Again, Page's argument falls woefully short. It consists of long excerpts of the Regulations, the hearing testimony and the medical records. *See* ECF Docket No. [9], p. 19-22. In two to three sentences, Page complains that the ALJ relied upon the state agency physician's conclusion in arriving at a finding regarding RFC. It is well established that "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician', the ALJ may choose whom to credit". *Becker v. Comm'r. of Soc. Sec.*, Civ. No. 10-2517, 2010 WL 5078238 at * 5 (3d Cir. Dec. 14, 2010)(internal citations omitted). Moreover, because they are experts in Social Security disability programs, state agent opinions merit significant consideration. See SSR 96-6p. For the reasons set forth above, I find that the ALJ's treatment of, and weighing of, the opinions from the various medical sources, was appropriate. Consequently, I reject Page's argument.

### III. <u>CONCLUSION</u>

After a thorough review of the record and careful consideration of Page's arguments, I find that substantial evidence supports the ALJ's conclusions in all respects, save one. The ALJ's findings regarding the cumulative impact Page's obesity may have had upon his other impairments was deficient and precluded meaningful review. Upon remand the ALJ shall engage in a thorough analysis consistent with the dictates of this Opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL LEE PAGE, | ) | |
| Plaintiff, | ) ) ) | |
| -vs- | ) ) | Civil Action No. 14-0295 |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge.

# **ORDER OF COURT**

Therefore, this 30th day of September, 2014, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 8) is granted in part and denied in part and Defendant's Motion for Summary Judgment (Docket No. 12) is denied.

It is further ordered that the decision of the Commissioner of Social Security is hereby vacated and the case is remanded for further proceedings consistent with the foregoing opinion.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge